IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ACTBLUE LLC, ACTBLUE CIVICS, INC.,
ATS, INC., and ACTBLUE CHARITIES,
INC.,

*Plaintiffs,*

v.

WARREN KENNETH PAXTON, JR., *in his
official capacity as Attorney General of the
State of Texas*,

*Defendant.*

Civil Action No. 1:26-cv-11986

**BRIEF OF AMICI CURIAE
TEXAS CIVIC AND NON-PROFIT ORGANIZATIONS
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................................................. iii

INTRODUCTION AND STATEMENT OF INTEREST ............................................................. 1

ARGUMENT ........................................................................................................................ 3

    I.    The Attorney General's Investigation of ActBlue is Part of a Well-Documented, Escalating Playbook of Retaliatory Enforcement and Harassment Against Politically Disfavored Nonprofits. ............................................. 3

    II.   A Federal Court Has Already Enjoined the Same Pattern by the Same Defendant, and, Absent Relief, the Pattern Will Continue to Inflict Irreparable Harm. ................................................................................................................ 11

CONCLUSION .................................................................................................................... 13

CERTIFICATE OF SERVICE ................................................................................................ 15

## INDEX OF AUTHORITIES

**Cases**

*Buckley v. Valeo*,
    424 U.S. 1 (1976) (per curiam) ........................................................................... 12

*Elrod v. Burns*,
    427 U.S. 347 (1976)............................................................................................ 11

*First Choice Women's Res. Centers, Inc. v. Davenport*,
    No. 24-781, 2026 WL 1153029 (U.S. Apr. 29, 2026) .................................... 1, 12

*In re Off. of the Att'y Gen.*,
    722 S.W.3d 292 (Tex. App. 2025)........................................................................ 7

*In re Powered by People*,
    No. 15-25-00140-CV (Tex. App.—Fifteenth Ct. App. Sept. 12, 2025) ................. 3, 5, 12

*Jolt Initiative, Inc. v. Paxton*,
    No. 1:25-cv-01808-RP, 2026 WL 297633 (W.D. Tex. Jan. 29, 2026)..................... 3, 4, 11

*Las Americas Immigrant Advocacy Center v. Paxton*,
    No. 3:24-cv-00352 (W.D. Tex. filed Sept. 25, 2024) ........................................... 8

*McCutcheon v. FEC*,
    572 U.S. 185 (2014) (Thomas, J., concurring) ................................................... 11

*NAACP v. Ala. ex rel. Patterson*,
    357 U.S. 449 (1958)............................................................................................. 1

*Paxton v. Annunciation House, Inc.*,
    719 S.W.3d 555 (Tex. 2025), *reh'g denied* (Sept. 26, 2025)............................. 4

*Police Department of Chicago v. Mosley*,
    408 U.S. 92 (1972)............................................................................................. 13

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020)............................................................................................. 11

*State of Texas v. Jolt Initiative, Inc.*,
    No. 352-371410-25 (352d Dist. Ct., Tarrant County, Tex. Oct. 23, 2025) ......... 9

*State v. ActBlue LLC*,
    No. 096-376890-26 (Dist. Ct., Tarrant Cnty. filed Apr. 20, 2026)................... 10

**Other Authorities**

*AG Ken Paxton's Campaign Against Immigrant-Serving Groups Gets Boost From Court Rulings*, TEX. TRIB. (Dec. 9, 2025, 5:00 AM), https://perma.cc/TV6T-KF5G ................................................................................................................ 2

*Catholic Rio Grande Valley migrant shelter wins victory against Texas AG*, Nat'l Cath. Rep. (July 25, 2024), https://www.ncronline.org/news/migration/catholic-rio-grande-valley-migrant-shelter-wins-victory-against-texas-ag ................................................... 7

Eleanor Klibanoff, *Attorney General Ken Paxton asks judge to shut down Muslim advocacy group CAIR*, TEX. TRIB. (Feb. 5, 2026, 12:21 p.m.), https://www.texastribune.org/2026/02/05/ken-paxton-cair-lawsuit-muslim-brotherhood/ ......................................................................................................... 9

*Ken Paxton asks judge to jail Beto O'Rourke for fundraising Texas Dems' walkout*, TEX. TRIB. (Aug. 12, 2025, 11:25 a.m.), https://www.texastribune.org/2025/08/12/attorney-general-ken-paxton-beto-orourke-texas/ ................................................................................................ 5

Press Release, Off. Tex. Att'y Gen., *Attorney General Ken Paxton Secures Win in the Fifteenth Court of Appeals* (Oct. 15, 2025), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-secures-win-fifteenth-court-appeals-against-radical-open-borders-group ............................................................................................................... 7

*Texas attorney general can't question Catholic Charities director over migrant services, court says*, TEX. TRIB. (July 24, 2024, 2:58 p.m.), https://www.texastribune.org/2024/07/24/texas-border-charities-migrants-attorney-general-investigation-court-r/ .......................................................... 7

*Weaponized Oversight: Texas's Escalating Campaign Against Nonprofit Advocacy & The Chilling Effect on Speech and Association*, Rev. Litig. (forthcoming 2026) ("Marziani & Archer") https://papers.ssrn.com/sol3/papers.cfm?abstract_id=6748785 ............................... passim

**INTRODUCTION AND STATEMENT OF INTEREST**

Amici submit this brief in support of Plaintiff ActBlue Civics, Inc. ("ActBlue"), for their Complaint for Declaratory, Injunctive, and Other Relief against Defendant Warren Kenneth Paxton, Jr. in his official capacity as Attorney General of the State of Texas.

Amici are Texas-based nonprofit organizations engaged in a variety of humanitarian services, civic engagement, policy advocacy, and other mission-driven work directed at promoting the welfare of Texans and strengthening the State's civil society. App. A. Amici's missions and charitable activities are diverse. To take just a couple of examples: Jolt Initiative seeks to increase the civic participation of Latinos to build a stronger democracy, including through voter registration efforts; Grassroots Leadership fights to reduce mass incarceration and prison profiteering, including through community organizing; and MOVE Texas Civic Fund empowers college students and other young people, including through leadership development programming.

Each of Amici's missions, and the work of charitable nonprofits across Texas more broadly, depends on the constitutional right to associate freely with its members, volunteers, supporters, and donors. It is "beyond debate" that the "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty'" guaranteed by the U.S. Constitution. *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958). The U.S. Supreme Court recently reaffirmed that guarantee, explaining that the First Amendment "necessarily carries with it 'a corresponding right to associate with others.'" *First Choice Women's Res. Centers, Inc. v. Davenport*, No. 24-781, 2026 WL 1153029, at *6 (U.S. Apr. 29, 2026). Without that right, the Court warned, "'dissident expression' stands particularly vulnerable to marginalization or outright 'suppression by the majority,' leaving all of society poorer for it." *Id.* at 7. Therefore, the Court explained that government actions tending to "'curtail the freedom to associate' warrant 'the closest scrutiny' under the First Amendment." *Id.* (quoting *NAACP,* 357 U.S. at 460-461).

As discussed below, Attorney General Paxton has implemented a playbook against disfavored nonprofits that does precisely what these precedents condemn. In 2024 and 2025 alone, Attorney General Paxton, through the Office of the Attorney General (the "OAG"), harassed, intimidated, and publicly maligned at least a dozen nonprofit organizations through a litany of investigations and lawsuits, chilling speech and association. *See generally* Mimi Marziani & Patrick Archer, *Weaponized Oversight: Texas's Escalating Campaign Against Nonprofit Advocacy & The Chilling Effect on Speech and Association*, Rev. Litig. (forthcoming 2026) ("Marziani & Archer").[1]

These attacks were motivated by politics, not by legitimate legal concerns. "Every one of the targeted organizations is something Paxton sees as inconsistent with his conservative philosophy of governance." Eleanor Klibanoff, *AG Ken Paxton's Campaign Against Immigrant-Serving Groups Gets Boost From Court Rulings*, TEX. TRIB. (Dec. 9, 2025, 5:00 AM), https://perma.cc/TV6T-KF5G (quoting Randall Erben, a professor at the University of Texas School of Law and former aide to Republican Texas Gov. Greg Abbott). To retaliate against disfavored speech and enforce his own ideology—while promoting his own political brand—the Attorney General has written and repeatedly implemented a "playbook." *Id.* Specifically, the OAG issues sweeping demands for sensitive associational information on compressed timelines, before inevitably escalating those demands regardless of an organization's level of cooperation. The OAG simultaneously files pleadings rife with inflammatory rhetoric and spurious allegations, all while running a parallel press operation that publicly maligns the organization. While these investigations purport to protect the rights of Texans, the rhetoric and glaring lack of substance make clear that they are instead politically motivated.

---

[1] *Available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=6748785.

Amici have a strong interest in bringing this record to the Court's attention, given the significant negative impact of Attorney General Paxton's actions on Texas civil society. But for the protections of the First Amendment, upheld by state and federal courts, Amici would not have been able to continue their lawful work without disruption. Amici's unique positioning thus compels them to shed light on the playbook the Attorney General is employing against ActBlue, and support its motion for relief.

## ARGUMENT

**I.    The Attorney General's Investigation of ActBlue is Part of a Well-Documented, Escalating Playbook of Retaliatory Enforcement and Harassment Against Politically Disfavored Nonprofits.**

The OAG has initiated investigations or lawsuits against at least a dozen nonprofit corporations in just the last two years. *See* Marziani & Archer, *supra* page 2*,* at 4. Each of the targeted nonprofits shares a common feature: they engage in advocacy, services or speech that the Attorney General ideologically opposes.

The matters catalogued below illustrate the scope, methodology, and recurrence of the Attorney General's conduct. Notably, this list is illustrative—not exhaustive. While many of these cases remain ongoing, no state or federal court has substantiated the Attorney General's factual allegations against these nonprofits. On the contrary, in recent months alone, the Western District of Texas and Texas' Fifteenth Court of Appeals have blocked efforts by the Attorney General on freedom-of-speech grounds. *Jolt Initiative, Inc. v. Paxton*, No. 1:25-cv-01808-RP, 2026 WL 297633 (W.D. Tex. Jan. 29, 2026) (granting preliminary injunction barring Attorney General's state-court *quo warranto* action against Jolt as brought in bad faith and in violation of First Amendment); *In re Powered by People*, No. 15-25-00140-CV (Tex. App.—Fifteenth Ct. App. Sept. 12, 2025) (order) (staying temporary restraining order ("TRO") against Powered by People

3

where Attorney General offered scant evidence of unlawful conduct and TRO infringed on the First Amendment rights of that political organization and its leadership).

- ***Jolt Initiative.*** Jolt is a nonprofit dedicated to civic engagement among young Latino Texans. *Jolt,* No. 15-25-00140-CV at 1. In August 2024, the OAG opened an investigation into Jolt based upon a Fox News personality's social-media post—which had already been debunked by local Republican officials—claiming that migrants were being registered to vote outside DMVs. *Id* at 2. As evidence, the OAG also identified a report from an OAG investigator that described an interaction with a Jolt volunteer deputy voter registrar ("VDR") wherein the VDR *correctly conveyed* Texas law, as well as a video from a self-described "citizen journalist" that, viewed in full, similarly demonstrated a VDR accurately describing the law. *Id.* at 3-4. Nevertheless, the OAG issued a Request to Examine ("RTE") demanding Jolt's member, volunteer and registrant identities. *Id* at 4-5. In response, Jolt sued in federal court, primarily on First Amendment grounds. *Id.* The parties subsequently dismissed that case based on the OAG's written assurance that it had withdrawn and would not reissue the RTE, only for the Attorney General to file a *quo warranto* petition in Tarrant County state court the very same day, using the exact same debunked allegations and seeking the corporate death sentence against Jolt.[2] *Id.* at 5–6. As a result of the investigation, Jolt's voter registrations dropped from over 12,000 in a typical off-year to roughly 3,500 in 2025, which forced layoffs. *Id.* at 25.

---

[2] *Quo warranto* has existed in Texas since the Republic adopted English common law in 1840. *See* Marziani & Archer, *supra* page 2, at 33. The doctrine was later constitutionalized and given procedural form, before falling into "relative disuse" for most of the twentieth century. *Id*. Historically, the device was reserved for egregious corporate misconduct, and before the *Annunciation House* case, discussed below, the Texas Supreme Court "ha[d] not addressed the nature of a *quo warranto* action for more than a century." *Paxton v. Annunciation House, Inc.*, 719 S.W.3d 555, 566 (Tex. 2025), *reh'g denied* (Sept. 26, 2025). However, the Attorney General has resurrected and transformed *quo warranto* into an ever-present threat against organizations with whom he disagrees ideologically.

- ***Powered by People.*** Powered by People is a voter-registration organization founded by former Congressman Beto O'Rourke; it has helped register hundreds of thousands of Texas voters in recent years. Marziani & Archer, *supra* page 2*,* at 24. After Mr. O'Rourke and the organization became prominent opponents of Texas Republicans' mid-decade redistricting effort in summer 2025, the Attorney General opened an investigation, alternately theorizing campaign-finance violations, consumer protection law violations, and unlawful "bribery." *Id.* at 26. The Attorney General publicly admitted he had no "details" supporting his various accusations and was instead fishing to determine whether wrongdoing had occurred, while his Senate campaign openly acknowledged that Mr. O'Rourke was seen as a potential political rival. *Id.* at 25. On August 6, 2025, the OAG served organizational board members at their private homes in El Paso County with a RTE asserting a 48-hour production deadline. *Id.* Two days later (and before that deadline), the OAG sued Powered by People hundreds of miles away in Tarrant County and obtained a sweeping, ex parte TRO, which went so far as to restrict the organization's non-political fundraising and freeze its Texas assets. *Id.* at 42 (this order was stayed after an emergency appeal). Several days later, the Attorney General escalated again, requesting that the trial court actually *jail Mr. O'Rourke* for a demonstrably falsified allegation that Mr. O'Rourke had violated the TRO. *Id.* at 21.[3]

---

[3] At a rally in Fort Worth, Mr. O'Rourke encouraged retaliatory redistricting around the country in response to Texas' recent redistricting by stating, "there are no refs in this game, f*** the rules." *Ken Paxton asks judge to jail Beto O'Rourke for fundraising Texas Dems' walkout*, TEX. TRIB. (Aug. 12, 2025, 11:25 a.m.), https://www.texastribune.org/2025/08/12/attorney-general-ken-paxton-beto-orourke-texas/. The Attorney General knowingly took this statement out of context, alleging that Mr. O'Rourke made those comments about the court's "rules," thereby violating the TRO and requiring that Mr. O'Rourke was jailed. *Id.* To be clear, Mr. O'Rourke's statement had absolutely nothing to do with the TRO. Despite counsel for Mr. O'Rourke repeatedly making this clear, the OAG continues to knowingly misrepresent this statement in proceedings before Texas' Fifteenth Court of Appeals. *See* Oral Argument at 20:25, *In re Powered by People*, No. 15-25-00140-CV (Tex. App.—15th Dist. argued March 12, 2026), https://www.youtube.com/watch?v=4PZacpgdlic&t=1225s.

- ***Annunciation House***: Annunciation House is an El Paso-based Catholic nonprofit that provides food and shelter to unhoused individuals, including undocumented migrants. In February 2024, the OAG officials demanded Annunciation House produce their internal files within one day or face forfeiture of their corporate charter. *See Annunciation House, Inc.*, 719 S.W.3d at 564. After the organization obtained a TRO, the Attorney General responded by seeking to dissolve the organization through *quo warranto* proceedings alleging that Annunciation House's humanitarian work amounted to "illegal alien harboring." *Id.* at 565. Since the investigation began, Annunciation House volunteers report receiving threatening phone calls and several have left as a result. *See* Marziani & Archer, *supra* page 2*,* at 29.

- ***FIEL Houston:*** Familias Immigrantes y Estudiantes en la Lucha ("FIEL") is a small, Houston-based nonprofit providing educational and social services to immigrant families. *Id.* at 13. The Attorney General sought to levy the corporate death sentence on FIEL through *quo warranto* proceedings. The OAG claimed that a handful of social-media posts opposing then-President Biden's immigration policies and criticizing President Trump constituted prohibited Section 501(c)(3) activity, even though the State lacks jurisdiction to enforce federal tax law. *Paxton v. FIEL Houston*, No. 15-24-00110-CV, 2025 WL 2857332, at *3, *6 (Tex. App.—15th Dist. Oct. 9, 2025). Since then, the Attorney General has publicly characterized FIEL as "a radical, anti-American, open borders organization" whose "aim is to destroy our country and flood our nation with foreign invaders," even though these statements are unsubstantiated and have nothing to do with the State's corporate and tax law allegations against FIEL. *See* Press Release, Off. Tex. Att'y Gen., *Attorney General Ken Paxton Secures Win in the Fifteenth Court of Appeals* (Oct.

15, 2025), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-secures-win-fifteenth-court-appeals-against-radical-open-borders-group.

- *Catholic Charities of the Rio Grande Valley:* Catholic Charities RGV is a humanitarian organization led by Sister Norma Pimentel, a Catholic nun and member of the Missionaries of Jesus. *See* Aleja Hertzler-McCain, *Catholic Rio Grande Valley migrant shelter wins victory against Texas AG*, Nat'l Cath. Rep. (July 25, 2024), https://www.ncronline.org/news/migration/catholic-rio-grande-valley-migrant-shelter-wins-victory-against-texas-ag. In March 2024, on the first weekday of Holy Week, the OAG served a "Notice of Demand for Sworn Statement" directing the organization to designate a representative to testify on alleged "aid for illegal border crossings." *In re Off. of the Att'y Gen.*, 722 S.W.3d 292, 294–95 (Tex. App. 2025). Catholic Charities RGV complied, producing over 100 pages of documents and a sworn statement from Sister Norma Pimentel. *Id.* at 295. The OAG nonetheless dismissed Sister Norma Pimentel's sworn answers as non-responsive and evasive and filed a Texas Rule of Procedure 202 petition for a pre-suit deposition of Sister Norma Pimentel in anticipation of a possible *quo warranto* suit. Berenice Garcia, *Texas attorney general can't question Catholic Charities director over migrant services, court says*, TEX. TRIB. (July 24, 2024, 2:58 p.m.), https://www.texastribune.org/2024/07/24/texas-border-charities-migrants-attorney-general-investigation-court-r/.

- *Team Brownsville:* Team Brownsville is a humanitarian organization that provides services to asylum seekers at the Texas–Mexico border. Marziani & Archer, *supra* page 2, at 16. The OAG lodged a similar investigation against Team Brownsville as against Catholic Charities RGV, which resulted in the organization's leadership concluding that it

7

"did not feel safe anymore," operating in Texas. *Id.* It has since disbanded and reformed out of state under the umbrella of a different nonprofit. *Id.*

- *PFLAG:* PFLAG is a national LGBTQ+ advocacy nonprofit. *Id.* at 18. After PFLAG's CEO submitted an affidavit in a federal lawsuit challenging Texas's ban on gender-affirming care for minors, the OAG relied upon that affidavit to initiate a separate investigation into PFLAG, demanding internal documents related to the communications and personal information of its members. As a result, PFLAG has reported lost volunteers and decreased attendance at in-person support-group meetings. *Id.* at 19.

- *Las Americas Immigrant Advocacy Center.* Las Americas is a nonprofit providing legal services to low-income immigrants on whom the OAG served a wide-ranging Civil Investigative Demand ("CID"), demanding confidential client files, including materials seemingly protected by attorney-client privilege. *Id.* at 19-20*; Las Americas Immigrant Advocacy Center v. Paxton*, No. 3:24-cv-00352 (W.D. Tex. filed Sept. 25, 2024), ECF No. 1. Las Americas then filed suit in the Western District of Texas, alleging the investigation was part of a pretextual effort to "intimidate and harass organizations that advocate for marginalized communities." *Id.* at 20. After the court denied preliminary relief on procedural grounds based on a three-week delay in filing, Las Americas complied and provided documents. *Id.* The OAG responded by moving to dismiss the case and for sanctions against Las Americas. *Id.* The investigation forced the organization to spend an unplanned $25,000 hardening its security systems and reconsider its work in Ciudad Juárez altogether. *Id.* at 29.[4]

---

[4] Again, the matters described above are non-exhaustive. For example, in 2024 and 2025, the Attorney General also announced investigations into Angeles Sin Fronteras (an immigrant-services organization), Texas Majority PAC (related to fundraising for Democratic legislators who broke quorum), Foundation Communities and Love Austin PAC (both over donations to a local tax-funding ballot initiative opposed by Austin conservatives). *See* Marziani &

Each of these investigations follows the same pattern: first, the OAG opens with sweeping demands for sensitive associational information on compressed timelines. Then, regardless of the organization's level of cooperation, the information provided is seemingly never satisfactory to the OAG. When the organization seeks judicial review or otherwise resists demands, the OAG escalates by filing a *quo warranto* petition or an enforcement action under the Deceptive Trade Practice Act, frequently in venues with no apparent factual nexus to the case. Indeed, in escalating its targeting of Jolt by filing a *quo warranto* petition, the OAG initially claimed that Jolt's First Amendment lawsuit, seeking protection from government intrusion, was itself grounds to support the OAG's actions. *State of Texas v. Jolt Initiative, Inc.*, No. 352-371410-25, State's Motion for Leave to File Its Original Petition and Information in the Nature of Quo Warranto (352d Dist. Ct., Tarrant County, Tex. Oct. 23, 2025) ("But rather than producing any documents or cooperating with the State's investigation in any respect, JOLT commenced a federal lawsuit to stall the investigation through the 2024 election.").

In parallel with its legal actions, the OAG runs press operations labeling targeted organizations in inflammatory terms such as "radical," "anti-American," "open-borders," or "evil and wicked."[5] Marziani & Archer, *supra* page 2, at 7. And when courts reject specific procedural

---

Archer, *supra* page 2, at 7. The Attorney General also sued the Sunrise Community Church Homeless Navigation Center to enjoin drug addiction services, as well as Harris and Bexar Counties to dismantle grant programs funding immigrant legal services. *See, e.g.*, *id.* at 7 (Paxton describing Harris County's program as "evil and wicked."). Moreover, in early 2026, the Attorney General brought a lawsuit against CAIR Foundation and its Texas affiliates, claiming (without evidence) that CAIR is in fact an arm of the Muslim Brotherhood and seeking to halt all of its activities in Texas. Eleanor Klibanoff, *Attorney General Ken Paxton asks judge to shut down Muslim advocacy group CAIR*, TEX. TRIB. (Feb. 5, 2026, 12:21 p.m.), https://www.texastribune.org/2026/02/05/ken-paxton-cair-lawsuit-muslim-brotherhood/.

[5] Specific examples include attacks against: **(1) ActBlue:** branding it a tool of "the radical left" used to "funnel foreign donations and dark money . . . to subvert our laws"; **(2) Jolt Initiative:** describing it as a "radical activist organization" registering "illegals, who are all criminals," and declaring that Jolt "must be completely crushed and shut down immediately"; **(3) FIEL:** calling FIEL a "radical, anti-American, open borders organization" whose "aim is to destroy our country and flood our nation with foreign invaders"; **(4) Annunciation House:** labeling Annunciation House as a "criminal enterprise" and warning that "[a]ll NGOs who are complicit in Joe Biden's illegal immigration catastrophe . . . should consider themselves on notice"; **(5) Powered by People:** describing Powered by People as a "radical organization" run by "repeat loser Beto O'Rourke" and vowing to "wage legal war" against it; and **(6) Harris County:**

moves, the OAG shifts to new legal tools and theories rather than abandoning the underlying investigation. *Id.* at 40.

Together, these tactics reflect the Attorney General's strategy of exerting maximum pain on political opponents by deploying novel legal theories and internet-based fabrications, while transforming rarely used legal tools like *quo warranto* into "tool[s] for intimidating or threatening organizations with differing political priorities." *Id.* The consequences have been severe, and illustrate the significant burden on speech and association: six-figure legal expenditures, staff layoffs, frozen or constrained fundraising, lost volunteers, donor and member withdrawal, curtailed programming, and in some cases corporate dissolution or relocation out of state. *Id.* at 28.

The OAG's playbook is on full display here.  The OAG dispatched investigators to build a case against ActBlue after a high-profile fundraising event by Attorney General Paxton's leading Democratic opponent in the U.S. Senate race "rais[ed] more than $2 million in 24 hours through ActBlue." Compl. ¶ 3. The OAG issued extremely broad RTEs and CIDs that seek sensitive associational information well beyond the usual scope of regulatory investigation. *Id.* ¶ 18. The OAG then filed suit in Tarrant County, home to Fort Worth—the same forum it selected for its actions against Powered by People and Jolt—despite ActBlue's Massachusetts headquarters and the absence of any apparent factual nexus to Tarrant County. *Compare* Pet., *State v. ActBlue LLC*, No. 096-376890-26 (Dist. Ct., Tarrant Cnty. filed Apr. 20, 2026), *with* Marziani & Archer, *supra* page 2, at 23-24. Further, the Attorney General's filing—much like the filings against the nonprofits discussed above—is rife with inflammatory rhetoric, as well as false allegations

---

characterizing its allocation of funds to immigrant-aid organizations as "evil and wicked." *See* Marziani & Archer, *supra* page 2*,* at 7-9.

untethered to ActBlue's actual policies. *See* Compl. ¶ 78. Consistent with that pattern, the Attorney General announced the filing on conservative podcasts, where he criticized ActBlue's political affiliations. *Id.* ¶ 3 ("ActBlue has raised billions of dollars for liberal causes, liberal Democrats.").

As discussed below, *infra* Section II, the Attorney General's pattern of pressing forward with meritless allegations even after the evidence has contradicted his theory has already led to a federal injunction in *Jolt.* This Court should take the same action and enjoin the OAG.

## II.    A Federal Court Has Already Enjoined the Same Pattern by the Same Defendant, and, Absent Relief, the Pattern Will Continue to Inflict Irreparable Harm.

Earlier this year, in *Jolt Initiative, Inc. v. Paxton*, a Western District of Texas federal court found that Jolt was likely to succeed on its First Amendment retaliation claim in part because the Attorney General "has not provided any credible grounds to confirm that his filing of a *quo warranto* action was a result of anything other than [Jolt's] constitutionally protected conduct." *Jolt,* ECF No. 44 at 11. The Court characterized the underlying allegations as "baseless" and noted that Attorney General Paxton "has not provided any credible evidence suggesting that Plaintiff's [volunteers] were engaged in any other voter registration activities other than . . . constitutionally protected ones." *Id.* at 10. The Court went on to conclude that the OAG's *quo warranto* action "would chill a person of ordinary firmness." *Id.* Further, the Court found that the Attorney General had acted in "bad faith," and cited his escalating use of enforcement tools without finding any new evidence to suggest wrongdoing. *Id.* at 9.

Each such finding applies here. ActBlue is engaged in the core protected First Amendment activity of facilitating political contributions and association. *See McCutcheon v. FEC*, 572 U.S. 185, 228 (2014) (Thomas, J., concurring); Compl. ¶¶ 2, 6. ActBlue, like Jolt, faces an enforcement action whose chilling effect on its operations and donors is irreparable as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19

11

(2020). Indeed, a unanimous Supreme Court recently emphasized that the chill and resulting injury "occurs not just when a[n] [enforcement action] is enforced, but when it is made and for as long as it remains outstanding." *First Choice*, 2026 WL 1153029, at *9. Relatedly, the Court held that "any demand for donor information . . . must overcome heightened First Amendment scrutiny" because such demands "'inevitabl[y]' carry with them a 'deterrent effect on the exercise of First Amendment rights.'" *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 65 (1976) (per curiam)).

Further, ActBlue, like Jolt, can point to the type of suspicious investigatory timing that the Court in *Jolt* found to be dispositive indicia of retaliatory motive. Compl. ¶¶ 67–71. And here, as in *Jolt*, the evidence proffered by the Attorney General's own office and investigators directly contradicts their own allegations, yet the Attorney General continues to press that allegation forward. *Compare id.* ¶¶ 81–82 (OAG's investigator was rejected three times when attempting gift-card donations), *with* TX Pet. ¶ 64 (alleging that ActBlue had "secretly resumed acceptance of gift card donations"). ActBlue—like Mr. O'Rourke—has also been singled out by an Attorney General who selectively ties his legal actions to his targets' political affiliations and leverages the resulting publicity of these actions to advance his own Senate candidacy. *Compare* Compl. ¶¶ 74–75 *with In re Powered by People*, No. 15-25-00140-CV (staying TRO procured by Attorney General —also a U.S. Senate candidate—against his potential Senate opponent, Mr. O'Rourke). Finally, this investigation has cycled through multiple investigative tools over an eighteen-month timeline and was only resurrected after ActBlue's role in fundraising for the Attorney General's opponent became politically salient. *See generally id.* ¶¶ 55-71. These parallels are no coincidence; instead, they are part of the playbook the Attorney General has used to harass dozens of nonprofits.

Without injunctive relief, ActBlue will continue to suffer irreparable harms of the kind catalogued in Section I of this brief—harms that include significant legal expense, reputational injury and operational disruption—and which compound every day the OAG's investigation is not enjoined. Further, without relief, Amici and any nonprofit working in Texas "will continue to risk harassment, expensive litigation, and even dissolution simply for expressing disfavored views." Marziani & Archer, *supra* page 2, at 49. This Court must grant ActBlue's requested relief not only to halt the harms ActBlue is suffering, but to signal that nonprofit organizations like Amici are not without recourse when confronted by an Attorney General willing to wield his office to "restrict expression because of its message, its ideas, its subject matter, or its content." *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95–96 (1972).

## CONCLUSION

For the foregoing reasons, Amici respectfully urge the Court to grant ActBlue's requested declaratory and injunctive relief.

May 26, 2026                                         Respectfully submitted,

Howard M. Cooper, Esq. (BBO No. 543842)
Josh L. Launer, Esq. (BBO No. 673661)
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
jlauner@toddweld.com

 -and-

Norman Eisen, Esq.*
D.C. Bar No. 435051

13

Stephen A. Jonas, Esq.*
D.C. Bar No. 90037069
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue, SE, #15180
Washington, D.C. 20003
Tel: (202) 594-9958
norman@democracydefenders.org
steve@democracydefenders.org

-and-

Mimi Marziani, Esq.*
Texas Bar No. 24091906
mmarziani@msgpllc.com
Rebecca (Beth) Stevens, Esq.*
Texas Bar No. 24065381
bstevens@msgpllc.com
Joaquin Gonzalez, Esq.*
Texas Bar No. 24109935
jgonzalez@msgpllc.com
Andrew Silberstein, Esq.*
New York Bar No. 5877998
asilberstein@msgpllc.com
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604

*Motions for Admission Pro hac Vice forthcoming*

**COUNSEL FOR AMICI CURIAE
AUSTIN JUSTICE COALITION, AVOW,
EQUALITY TEXAS, GRASSROOTS
LEADERSHIP, HOUSTON IMMIGRATION
LEGAL SERVICES COLLABORATIVE, JOLT
INITIATIVE, MOVE TEXAS CIVIC FUND,
PROJECT TAHA, RADICAL REGISTRARS,
TEXAS EQUAL ACCESS FUND, TEXAS FOR
ALL, TEXAS FREEDOM NETWORK, TEXAS
NONPROFIT PROTECTION NETWORK,
TEXAS UNITARIAN UNIVERSALIST
JUSTICE MINISTRY, AND TRANSGENDER
EDUCATION NETWORK OF TEXAS**

14

## **CERTIFICATE OF SERVICE**

I, Josh L. Launer, Esq., hereby certify that the foregoing was filed through the Court's CM/ECF system on May 26, 2026, and will therefore be sent electronically to all counsel of record who have appeared in this matter as identified on the Notice of Electronic Filing (NEF).

Josh L. Launer, Esq.

15

## APPENDIX A

AUSTIN JUSTICE COALITION

AVOW

EQUALITY TEXAS

GRASSROOTS LEADERSHIP

HOUSTON IMMIGRATION LEGAL SERVICES COLLABORATIVE

JOLT INITIATIVE

MOVE TEXAS CIVIC FUND

PROJECT TAHA

RADICAL REGISTRARS

TEXAS EQUAL ACCESS FUND

TEXAS FOR ALL

TEXAS FREEDOM NETWORK

TEXAS NONPROFIT PROTECTION NETWORK

TEXAS UNITARIAN UNIVERSALIST JUSTICE MINISTRY

TRANSGENDER EDUCATION NETWORK OF TEXAS