# Exhibit 1

**ActBlue's Special Appearance (May 18, 2026)**

096-376890-26

FILED
TARRANT COUNTY
5/18/2026 12:00 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 096-376890-26

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | TARRANT COUNTY, TEXAS |
| ACTBLUE LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | 96th JUDICIAL DISTRICT |
| | § | |

### ACTBLUE'S VERIFIED SPECIAL APPEARANCE

Pursuant to Texas Rule of Civil Procedure 120a, Defendant ActBlue LLC asks the Court to sustain its special appearance and dismiss this suit for lack of personal jurisdiction. This Court lacks jurisdiction over ActBlue because ActBlue has no continuous and systemic presence in Texas, and this action does not arise from conduct concerning ActBlue's purposeful contacts with Texas. Stripped of its inflammatory rhetoric, the Petition alleges that ActBlue receives political donations made through an online platform that accepts gift cards and prepaid debit cards (among other forms of payment). The State's theory is that this violated Texas's Deceptive Trade Practices Act ("DTPA") because ActBlue made statements to Congress and on its website about its processing of donor transactions that, the State claims, were untrue. *See, e.g.*, Pet. ¶¶ 23, 44. These allegations (even if true) concern conduct that occurred *solely* outside of Texas, and thus provide no basis to hale ActBlue into court here.

More specifically, the Petition asserts both general and specific jurisdiction but fails to plead facts establishing either. The State cannot establish general jurisdiction because ActBlue is not incorporated in Texas, does not maintain its principal place of business here, and does not have continuous and systematic contacts as to render it "essentially at home" in Texas. And the State cannot establish specific jurisdiction because it does not assert that any allegedly wrongful conduct

1

occurred in Texas, was directed uniquely at Texas residents, or arose from ActBlue's Texas-specific activities.  Instead, the State relies on ActBlue's operation of a nationally available online platform to process donations, ActBlue's allegedly false statements to Congress and on its website, and the donations made by Office of the Attorney General ("OAG") investigators to Texas candidates through ActBlue.  These allegations, even if true, would not, as a matter of law, establish personal jurisdiction in Texas.  Finally, the State cannot establish personal jurisdiction via consent, as Texas law is clear that registering to do business in Texas does not confer personal jurisdiction over an out-of-state corporation like ActBlue.

In short, because the State has not met its burden to establish personal jurisdiction, the Court should sustain ActBlue's special appearance and dismiss the claims against ActBlue.

## BACKGROUND

### I.    ActBlue And Its Donation-Collection Policies

ActBlue is a Massachusetts limited liability corporation with its principal place of business in Boston, Massachusetts.  Gilmer Decl. ¶ 3.  It has no offices in Texas, and none of its managing officers is based in or works out of Texas.  Gilmer Decl ¶¶ 5, 6.  ActBlue's Chief Financial Officer, Director of Information Technology, and Account Operations Director are instead all located in Massachusetts.  Gilmer Decl. ¶ 6.  Of ActBlue's 258 employees, only fourteen—approximately five percent—work (remotely) in Texas.  Gilmer Decl. ¶ 5.

ActBlue's core business operations—including fundraising infrastructure, payment processing, and compliance functions—are conducted outside of Texas.  Sharton Decl. ¶ 8.  ActBlue processes and transmits donations through bank accounts that are located outside of Texas.  Sharton Decl. ¶ 9.  Financial reporting to the Federal Election Commission and other regulatory bodies regarding ActBlue's operations is overseen by the company's treasurer and CFO, who, as noted, works in Massachusetts.  Gilmer Decl. ¶¶ 2, 4.  ActBlue's responses to

investigations and the associated document productions take place outside of Texas. Gilmer Decl. ¶ 8. None of the conduct alleged in the Petition was undertaken by ActBlue personnel located in Texas. Gilmer Decl. ¶ 8; *see* Sharton Decl. ¶¶ 6–10, 19; Khan Decl. ¶¶ 4–5.

ActBlue's policies—including those concerning donations made using gift cards and prepaid debit cards, which are the policies at issue here—are developed, implemented, reviewed, and managed entirely outside of Texas. Sharton Decl. ¶ 6. Any purported "acceptance" of gift card or prepaid debit card donations was also done outside Texas because ActBlue's donation-processing and fraud-review functions do not take place in Texas. Sharton Decl. ¶ 7. As for ActBlue's alleged misrepresentations, ActBlue's public statements, letters, and other communications are drafted, reviewed, and released outside of Texas. Khan Decl. ¶¶ 4–5. All of ActBlue's marketing materials are likewise drafted, reviewed, and approved outside of Texas. Khan Decl. ¶ 4. And ActBlue's internet-based platform, through which people can make political donations, is accessible to users throughout the United States. Sharton Decl. ¶ 12. Nothing about ActBlue's platform specifically targets Texas.

## II. Donors And Campaigns That Use ActBlue's Donation Platform Agree To Litigate Any Claims Arising From That Use In Massachusetts Courts

ActBlue's relationship with individuals and entities that access or use its online donation platform and webpages is governed by its Terms of Service. Sharton Decl. ¶¶ 13–14; *id*. Ex. 1 § 1. Users agree to the Terms when they create an account, make a contribution, or otherwise interact with ActBlue's fundraising tools. *Id*. ¶ 15; *id.* Ex. 1 § 1. The Terms apply broadly to ActBlue's platform and the full range of services it provides, including its website, services, features, and related technology. *Id*. ¶ 17; *id*. Ex. 1 §§ 1, 3(a). The Terms also incorporate ActBlue's Privacy Policy and Account Use Policy. *Id*. ¶ 18; *id*. Ex. 1 §§ 2, 4(b). By employing any of these services,

users agree to be bound by the Terms. *Id.* ¶ 15; *id*. Ex. 1 § 1. The Terms of Service provisions apply to all users of the platform, regardless of location.

The Terms of Service provide that they govern disputes arising from users' relationship with ActBlue. *Id.* Ex. 1 § 1. They also provide that the Terms will "be governed by the laws of Massachusetts without regard to its conflict of law provisions" and that "[a]ny claims will be litigated exclusively in the United States District Court for the District of Massachusetts or the state courts of Middlesex County, Massachusetts." Sharton Decl. Ex. 1 § 6(e). The Terms also provide that both ActBlue and its users "consent to … personal and exclusive jurisdiction in those courts." *Id.* Accordingly, ActBlue has chosen, and its users have expressly agreed, that claims arising out of or relating to ActBlue's services are governed by Massachusetts law and are to be adjudicated solely in Massachusetts courts.

## LEGAL STANDARDS

The plaintiff bears the initial burden of pleading "specific facts" sufficient to establish personal jurisdiction. *PermiaCare v. L.R.H.*, 600 S.W.3d 431, 444 (Tex. App.—El Paso 2020, no pet.); *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). "[C]onclusory allegations … are insufficient." *PermiaCare*, 600 S.W.3d at 444. If the plaintiff carries its burden, the nonresident defendant must then negate the alleged bases for personal jurisdiction. *Kelly*, 301 S.W.3d at 658. The plaintiff bears the ultimate burden to present evidence establishing personal jurisdiction. *Id.* at 659.

Courts may exercise personal jurisdiction over a non-resident defendant when (1) the state's long-arm statute permits jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state due-process guarantees. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). Texas's long-arm statute permits courts to exercise personal jurisdiction over a non-resident defendant who "commits a tort in whole or in part in this state." Tex. Civ.

4

Prac. & Rem. Code § 17.042(2). "Because this statute reaches as far as the federal constitutional requirements for due process will allow, Texas courts may exercise jurisdiction over a nonresident so long as doing so comports with federal due process limitations." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016) (quotation marks and citations omitted). Accordingly, Texas can exercise jurisdiction over a non-resident defendant if the defendant has (1) established "minimum contacts" with the state and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A defendant's contacts with a state may support either general or specific jurisdiction. *Moncrief Oil*, 414 S.W.3d at 150. General jurisdiction arises "when a defendant's contacts with the forum state are so 'continuous and systematic' that the defendant is 'essentially at home'" there. *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023). A corporate defendant's state of incorporation and its principal place of business are "[t]he paradigm all-purpose forums for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). By contrast, specific jurisdiction arises when the defendant's forum contacts are "isolated or sporadic," and the plaintiff's cause of action arises from or relates to those contacts. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). The minimum contacts needed to establish specific jurisdiction require "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Whether a court has personal jurisdiction over a defendant is a question of law. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002). However, in resolving that question, trial courts must frequently resolve questions of fact. *Id.*

5

## ARGUMENT AND AUTHORITIES

The Petition's allegations about conduct attributable to ActBlue—which are the allegations that matter for purposes of determining personal jurisdiction—concern conduct that solely took place outside of Texas.  The Petition alleges that ActBlue "has accepted" the use of "domestic prepaid debit cards … as well as gift cards" despite supposedly having made statements otherwise to Congress and on its website.  Pet. ¶¶ 44, 47; *see id.* ¶¶ 58–60, 63–64, 68–69, 72–74, 77–80.

More specifically, for the first count, the Petition asserts that "ActBlue told Congress, and Congress publicized to the public, that it had stopped accepting gift card donations" and made similar representation to donors on its website, but then "resumed accepting them."  Pet. ¶¶ 58–59.  By accepting gift cards and prepaid debit cards, the State alleges, ActBlue purportedly "failed to provide the service to campaigns that it promised."  Pet. ¶ 60.  For the second count, the Petition alleges that "ActBlue told the world its platform operates under robust security and fraud prevention measures" but "secretly resumed acceptance of gift card donations" and "represented to campaigns that it restricts fraudulent donations."  Pet. ¶¶ 63–64.  For the third count, the Petition asserts that ActBlue "represented to Congress, to regulators, and to the public" that it automatically rejects "all gift cards and all donations made from high-risk or sanctioned countries" when, in fact, it was accepting "anonymous gift card and prepaid debit card donations."  Pet. ¶¶ 68–69.  For the fourth count, the Petition alleges that by "accepting gift cards and domestic prepaid debit cards," ActBlue "sold consumers, importantly campaigns, a product or service it never intended to deliver, that exposed them to violations of State and Federal Election laws."  Pet. ¶ 74.  And for the fifth count, the Petition alleges that "[h]ad ActBlue disclosed that it had resumed accepting gift card donations, many donors and campaigns would not have used its platform."  Pet. ¶ 80.  None of these allegations establishes either general or specific personal jurisdiction in Texas over ActBlue.

I.    **ActBlue Is Not Subject To General Jurisdiction In Texas**

A corporation is subject to general jurisdiction in a state court if: (1) it is incorporated in that state; (2) it has its principal place of business in that state; or (3) its "'affiliations with the state are so continuous and systematic as to render it essentially at home.'" *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) (quoting *Daimler*, 571 U.S. at 139).    Establishing affiliations through continuous and systematic contacts "entails a high bar," *id.*, and is appropriate only in "exceptional case[s]." *Hilton Franchise Holding LLC v. Peguero*, 2024 WL 4899032, at *6 (Tex. App.—Fort Worth Nov. 27, 2024, no pet.).

ActBlue is neither incorporated in Texas nor has its principal place of business there. ActBlue is instead incorporated in Massachusetts and maintains its principal place of business— its only physical office—in Boston.  Gilmer Decl. ¶ 3.  The Petition nonetheless alleges that ActBlue is subject to general jurisdiction in Texas because "its contacts and affiliations with Texas are so continuous and systematic as to render it essentially at home in Texas."  Pet. ¶ 5.  This "conclusory allegation[]" is "insufficient to meet [the] plaintiff's burden of establishing jurisdiction." *PermiaCare*, 600 S.W.3d at 444.  And it is also incorrect; as explained, ActBlue's core business operations, bank accounts, and managing officers are all located outside Texas. Sharton Decl. ¶¶ 7–9; Gilmer Decl. ¶¶ 3, 5, 6.  And of ActBlue's 258 employees nationwide, only fourteen—about five percent—reside in Texas (and work remotely).  Gilmer Decl. ¶ 5.  These undisputed facts preclude the conclusion that ActBlue is subject to general jurisdiction in Texas. *See Google LLC v. State*, 2025 WL 52611, at *3–5 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2025) (concluding that Google was not subject to general jurisdiction in Texas even though it had 2,400 employees there), *review granted*, *judgment vacated*, and *remanded by agreement*, 2025 WL 2992436 (Tex. Oct. 24, 2025).

Furthermore, as courts have repeatedly held, ActBlue's operation and maintenance of a website accessible in Texas does not establish general jurisdiction there. *See, e.g.*, *Double Eagle Resorts, Inc. v. Mott*, 216 S.W.3d 890, 898 (Tex. App.—Beaumont 2007, no pet.); *Reiff v. Roy*, 115 S.W.3d 700, 706 (Tex. App.—Dallas 2003, pet. denied). Indeed, the doctrine of general jurisdiction disfavors such "exorbitant exercises of all-purpose jurisdiction" like that urged by the State. *Daimler*, 571 U.S. at 139.

## II.    ActBlue Is Not Subject To Specific Jurisdiction In Texas Because Its Contacts With The State Do Not Show Purposeful Availment And Are Not The Basis Of The State's Claims

To demonstrate specific personal jurisdiction, "the evidence must satisfy a well-established two-prong test": (1) defendant "must have taken some act by which it purposefully availed itself of the privilege of conducting activities within Texas" and (2) "the claims must arise out of or relate to" the defendant's "Texas-focused activities." *BRP-Rotax GmbH & Co. KG v. Shaik*, 716 S.W.3d 98, 104 (Tex. 2025) (internal quotation marks and citations omitted). Both purposeful availment and relatedness are "co-equal components" of specific jurisdiction. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007). Although the State claims that each prong is satisfied here, *see* Pet. ¶ 6, neither is.

### A.    ActBlue's Operation Of Nationwide Donation Webpages Accessible In Texas Does Not Establish Purposeful Availment

The touchstone of the minimum-contacts analysis is whether the defendant's relevant conduct constitutes deliberate engagement with the forum state, such that it could reasonably anticipate being haled into court there. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). That standard is not satisfied when all relevant contacts are initiated by third parties, rather than by the defendant. *See Michiana*, 168 S.W.3d at 785; *Searcy*, 496 S.W.3d at 67; *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550,

564–65 (Tex. 2018); *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432–34 (5th Cir. 2014).

In *Google LLC v. State*, *supra*, a Texas court of appeals applied these principles to reject specific jurisdiction based on materially indistinguishable allegations. There, the State challenged allegedly deceptive disclosures and practices implemented through a nationwide online platform. 2025 WL 52611, at *1. The court held that such conduct did not establish personal jurisdiction because the allegedly deceptive statements were created outside Texas. *Id.* at *6–7. The court emphasized that the jurisdictional inquiry "depends solely on the defendant's acts within th[e] state," *id.* at *6, not the location of users of an online service or the downstream effects of nationwide conduct, and that a "'nonresident directing a tort at Texas from afar is insufficient to confer specific jurisdiction.'" *Id.* at *7 (quoting *Moncrief Oil*, 414 S.W.3d at 157). Because the operative facts and overwhelming evidence concerned conduct occurring outside Texas, and the State failed to identify any Texas-specific activity giving rise to its claims, the required nexus was absent. *Id.* at *7–8.

The same reasoning applies here. The State's theory of jurisdiction rests almost entirely on ActBlue's operation of a national online platform and the use of that platform by Texas residents. *See* Pet. ¶ 9. The statements here that allegedly violate the DTPA are ones ActBlue made to Congress, and statements published on ActBlue's website. Pet. ¶¶ 58–59, 63–64, 68–69. None of that occurred in Texas. Similarly, the processing of donations, which allegedly shows the statements' supposed illegality, occurs outside Texas. Sharton Decl. ¶ 7. Thus, the statements and conduct that underlie the State's claims were not directed at Texas in any meaningful sense. And third parties' decisions to use ActBlue's website is not an action *by ActBlue,* and thus cannot support specific personal jurisdiction.

ActBlue's Terms of Service reinforce the conclusion that ActBlue is not availing itself of the privilege of doing business in Texas. The Terms, which, govern "access to, interactions with, and use of ActBlue's platform" on a nationwide basis, contain no Texas-specific provisions. Sharton Decl. Ex. 1. And they provide that disputes are governed by Massachusetts law and must be litigated exclusively in Massachusetts, with the parties consenting to personal and exclusive jurisdiction there. *Id*. § 6(e). Thus, ActBlue deliberately centered its legal relationships in Massachusetts—not Texas; ActBlue did not seek to obtain any Texas-specific benefit from its operations. *See Burger King*, 471 U.S. at 482.

The State nevertheless asserts that jurisdiction lies because ActBlue processes donations involving Texas users and facilitates transactions connected to Texas campaigns. *See* Pet. ¶¶ 9, 38. But as explained, such processing does not happen in Texas, and the fact that some users of ActBlue's nationwide platform are in Texas is not enough. Specific jurisdiction cannot be based on "contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. Rather, the jurisdictional inquiry "depends solely on the defendant's acts within th[e] state." *Google*, 2025 WL 52611, at *6.

Finally, the State points to donations made by OAG investigators to Texas candidates and national committees. Pet. ¶¶ 39–41, 43. But again, the actions of a plaintiff or of third parties cannot establish jurisdiction over the defendant. And ActBlue did not initiate or direct the investigators' transactions; it merely processed them—outside of Texas. Sharton Decl. ¶ 7.

**B.       Plaintiff's Claims Do Not Arise From Any Of ActBlue's Activities In Texas**

"For specific-jurisdiction purposes, purposeful availment has no jurisdictional relevance unless the defendant's [alleged] liability arises from or relates to the forum contacts." *Moki Mac*, 221 S.W.3d at 579. Hence, even if a defendant has purposeful contacts with Texas, for specific jurisdiction to lie there "must be a 'substantial connection' between the operative facts of the

litigation and the defendant's contacts with the state." *Google*, 2025 WL 52611, at *6 (quoting *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 14 (Tex. 2021)).

Here, the key "operative facts" concern statements that ActBlue developed and released outside of Texas. Khan Decl. ¶ 4–5. These statements are the focus of the "substantial connection" analysis. *See Weatherford Artificial Lift Sys., Inc. v. A & E Sys. SDN BHD*, 470 S.W.3d 604, 613 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Yet the statements are not even alleged to have occurred in Texas.

### 1.     The operative facts in this claim have no relationship to Texas.

The Petition's DTPA claims are premised on donors and campaigns being allegedly misled by ActBlue's communications regarding its gift-card and prepaid-card acceptance policies. Pet. ¶¶ 59–60, 65, 72, 74, 80. For example, the Petition relies on a static page posted by ActBlue on its website. *Id.* ¶¶ 44, 59 (citing *ActBlue Investigation: What's Really Happening and What You Need to Know*, ActBlue (May 2, 2025), https://tinyurl.com/yc3wry24). But that does nothing to establish personal jurisdiction because ActBlue is not alleged to have targeted this communication to Texas, or to draft or otherwise develop the communication there. *See* Khan Decl. ¶ 4–5. Similarly, ActBlue's communications to Congress, which the Petition discusses extensively, *e.g.*, Pet. ¶¶ 58, 69, 77, are not alleged to have been targeted at Texas. And ActBlue's receipt of donations, including those made with payment methods challenged in the Petition, occurs outside of Texas and through a generally available website. Sharton Decl. ¶ 7. Indeed, apart from donations from Texas OAG investigators and unidentified others that were made to Texas candidates (and that cannot support jurisdiction because they are not the acts of ActBlue), the Petition does not even mention Texas in connection with any relevant alleged facts.

Making such "alleged[ly] misleading statements from afar" is "insufficient to confer specific jurisdiction." *Google*, 2025 WL 52611, at *7. In *Google*, a court of appeals held that the

11

trial court did not have specific personal jurisdiction over Google despite allegations that Google "lies about how it tracks and collects data about its Texas users." *Id.* at \*6. Like in *Google*, the State here alleges that the defendant has misled Texas donors and campaigns through misrepresentations and omissions regarding its policies for accepting certain online payment methods. The same flaw with the deficient *Google* complaint—that the State did not allege that that "any of [defendant's] Texas employees made the misleading statements," *id.* at \*7—exists here. The Petition should therefore likewise be dismissed.

### 2. Claims arising from ActBlue's generally available website are insufficient.

The Petition places great reliance on ActBlue's operation of a website accessible nationwide. But a "website, even an interactive one, cannot support specific jurisdiction where … it does not have the requisite substantial relationship to the plaintiff's claims." *ShopStyle, Inc. v. rewardStyle, Inc.*, 2020 WL 4187937, at \*13 (Tex. App.—Dallas July 21, 2020, no pet.). That principle alone requires dismissal here, because the State does not allege that ActBlue's website targets Texas. *See Wakefield v. British Med. Journal Publishing Grp., Ltd.*, 449 S.W.3d 172, 187–88 (Tex. App.—Austin 2014, no pet.). In other words, "[m]aking a website that's visible in Texas, of course, does not suffice" to create specific jurisdiction. *Johnson v. HuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021); *accord Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 785 (5th Cir. 2021). The Petition cites no contrary case law, or even argues otherwise.

To be sure, personal jurisdiction may exist in Texas over entities that use webpages to take "specific actions to target" communication to Texans. *State v. Yelp, Inc.*, 725 S.W.3d 170, 186 (Tex. App.—15th Dist. 2025, pet. filed). But ActBlue is not alleged to have done that. It did not, for example, place any select "relevant" donation pages to target with different terms, functionality, or treatment. *Id.* Payment methods are not processed differently on pages where donors are likely

to be Texans, nor does ActBlue make Texas-specific representations to donors on those pages. Sharton Decl. ¶¶ 8, 10.  When Texas-based campaigns and organizations use ActBlue to solicit funds, only they—not ActBlue—are taking action to target content to Texans.  These facts stand in stark contrast to a case in which the court of appeals held that specific jurisdiction existed over Yelp because its webpages appended allegedly misleading Consumer Notices to "relevant" pages for "Crisis Pregnancy Centers, including the Texas locations" where customers "are likely to be Texans."  *Yelp*, 725 S.W.3d at 186.

### 3. ActBlue's contacts with Texas-based candidates and organizations are insufficient to confer specific jurisdiction.

The Petition alleges that candidates and organizations based in Texas use ActBlue's platform.  Pet. ¶¶ 9, 38, 40–41, 43.  But any such contacts are irrelevant to the Petition's claims. Hence, even if any such contacts constitute purposeful availment, they would not support specific jurisdiction, because they are not "'actionable conduct[] *from which the claim arose*," *TV Azteca*, 490 S.W.3d at 53 (emphasis added).  Indeed, the U.S. Supreme Court has explained, that "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6 (2011).

The alleged "conduct[] from which the claim arose" here, *TV Azteca*, 490 S.W.3d at 53, concerns ActBlue's communications and donation-processing policies.  Those policies were designed and are implemented outside Texas.  Any relationships between ActBlue and Texas-based candidates or donors are therefore "additional" conduct, not "actionable" conduct.

Applying these principles, a Texas court has held that no personal jurisdiction exists when a defendant has a website in Texas that facilitates relationships with Texas-based entities, but those entities (and relationships) are not the Petition's focus.  Specifically, in a suit alleging that the

13

defendant's website misappropriated the plaintiff's content, a Texas court of appeals explained that "[w]hether [the defendant's] website is available in Texas or whether links to Texas-based retailers are available on [the defendant's] website is unrelated to the operative facts as alleged." *ShopStyle*, 2020 WL 4187937, at \*12. Because of this, the court concluded that these connections to Texas could not support specific personal jurisdiction over the defendant. *Id.* Just as the focus in that case was on the elements of misappropriation, which were "unrelated" to the defendant's website being "available in Texas," *id.*, the focus here will be on the elements of the State's DPTA claim, which are unrelated to ActBlue's website being available in Texas. Put simply, ActBlue's "alleged connections with Texas-based" entities, "regardless of how strong they might be, have no bearing on this part of the specific jurisdiction analysis." *Id.* at 13.

### 4.    Alleged harms to Texas-based entities are insufficient.

Finally, any alleged misleading of donors, candidates, or regulators in Texas cannot establish specific personal jurisdiction. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the *defendant's conduct* connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290 (emphasis added). As shown, ActBlue's conduct does not connect it with Texas in a meaningful way.

### C.    ActBlue Did Not Consent To Personal Jurisdiction By Registering And Transacting Business In Texas

Contrary to the Petition's claim, ActBlue did not "consent[] to personal jurisdiction by registering and transacting business in Texas." Pet. ¶ 7. As Texas appellate courts have repeatedly explained, "[t]he mere existence of [a defendant's] Texas business license does not establish minimum contacts in Texas." *ShopStyle*, 2020 WL 4187937, at \*12; *accord Telcon Services, LLC v. Primoris T & D Services, LLC*, 2025 WL 568529, at \*7 (Tex. App.—Fort Worth Feb. 20, 2025, no pet.) ("Neither Telcon's registering to do business in Texas nor its having Texas-based

14

employees was enough to establish specific jurisdiction over Telcon when these facts had no connection to Primoris's causes of action against Telcon.").

The Petition cites two cases for the proposition that ActBlue has consented to personal jurisdiction, but neither persuades.

In one case, the U.S. Supreme Court ruled that a *Pennsylvania* statute requiring out-of-state companies registered to do business in Pennsylvania to consent to personal jurisdiction did not violate the due process clause. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 125–127 (2023). But "unlike Pennsylvania law in *Mallory*, none of Texas's business registration statutes—and nothing in Texas's long-arm scheme—includes any language specifically directing that complying with them would subject a business to personal jurisdiction in Texas." *Repairify, Inc. v. Opus IVS, Inc.*, 2024 WL 2205663, at *1 (Tex. App.—Dallas May 16, 2024, no pet.) (mem. op.).

In the second case the Petition cites on this point, the court interpreted registration of a business under Article 8.02 of the Texas Business Corporation Act to constitute consent to jurisdiction. *See Acacia Pipeline Corp. v. Champlin Expl., Inc.*, 769 S.W.2d 719, 720 (Tex. App.—Houston [1st Dist.] 1989, no writ). But that statute is no longer in force, replaced by the Business Organizations Code—a "material change in the statutory law." *Certain Underwriters at Lloyd's, London v. Henry Vogt Mach. Co.*, 712 S.W.3d 909, 923 (Tex. App.—Houston [14th Dist.] 2025, no pet.). And under the "unambiguous language" of the current Code, foreign entities do not consent to the exercise of personal jurisdiction by Texas courts as a condition of registration to do business in Texas. *Id.* at 924. Personal jurisdiction via consent therefore does not exist here.

## III. Asserting Jurisdiction Would Offend Traditional Notions Of Fair Play And Substantial Justice

Finally, even if a defendant falls within the ambit of the long-arm statute because it "transacts business in Texas," Pet. ¶ 4, the exercise of jurisdiction must still be "consistent with

15

federal due-process guarantees," *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). Those guarantees include that any exercise of jurisdiction comport with "'traditional notions of fair play and substantial justice.'"  *Id.* at 346 (quoting *Int'l Shoe*, 326 U.S. at 316–17); *see also* Pet. ¶ 3.  To determine whether that standard is met, courts consider: "(1) the burden on the nonresident defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies." *Lensing v. Card*, 417 S.W.3d 152, 156 (Tex. App.—Dallas 2013, no pet.).

Here, these factors weigh strongly against finding jurisdiction.  With regards to the first factor, ActBlue would face a substantial burden litigating this dispute in Texas.  None of ActBlue's employees who could be witnesses are in Texas.  *See, e.g.*, *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 903 (S.D. Tex. 2013).  As to the second and third factors, the State's suit under the DTPA, which "qualif[ies] as [a] de facto class action[]," is asserting the rights of allegedly misled donors and campaigns.  *Thomas v. State*, 226 S.W.3d 697, 707 (Tex. App.—Corpus Christi 2007, pet. dism'd).  Those donors and campaigns agreed to litigate any claims in Massachusetts.  Sharton Decl. Ex. 1 § 6(e). And Texas has no special interest in adjudicating this dispute, when allegedly harmed donors and campaigns could do so on their own in Massachusetts, which can provide convenient and effective relief.  Finally, both the interstate judicial system's interest in the most efficient resolution of controversies, and the shared interest of the several states in furthering substantive social policies are advanced by honoring the Terms of Service voluntarily entered into by ActBlue and its users.  That approach would allow for the efficient resolution of disputes involving those parties, in the state (Massachusetts) where ActBlue is actually located and where

the Terms of Service establish jurisdiction (thereby allowing for more efficient resolution of controversies by eliminating any fights over jurisdiction).  And there is no reason to think (certainly the Petition offers none) that Massachusetts courts would fail to fully honor and vindicate "substantive social policies" shared by the several states.

## CONCLUSION

The Petition should be dismissed for lack of personal jurisdiction.

Dated:   May 17, 2026

Respectfully submitted,

By: */s/ Michael P. Lynn*

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP<br>Felicia H. Ellsworth<br>   (*pro hace vice forthcoming*)<br>   felicia.ellsworth@wilmerhale.com<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000<br>Facsimile: (617) 526-5000 | LYNN PINKER HURST & SCHWEGMANN, LLP<br>Michael P. Lynn<br>   Texas State Bar No. 12738500<br>   mlynn@lynnllp.com<br>Yaman Desai<br>   Texas State Bar No. 24101695<br>   ydesai@lynnllp.com<br>2100 Ross Avenue, Suite 2700<br>Dallas, Texas 75201<br>Telephone: (214) 981-3800<br>Facsimile: (214) 981-3839 |
| Ronald C. Machen<br>   (*pro hac vice forthcoming*)<br>   ronald.machen@wilmerhale.com<br>Matthew T. Jones<br>   (*pro hac vice forthcoming*)<br>   matthew.jones@wilmerhale.com<br>2100 Pennsylvania Avenue, NW<br>Washington, DC 20037<br>Telephone: (202) 663-6000<br>Facsimile: (202) 663-6363 | *Attorneys for Defendant ActBlue LLC* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document was served upon counsel of record on May 17, 2026, in accordance with Texas Rules of Civil Procedure.

*/s/ Yaman Desai*
Yaman Desai

17

## **VERIFICATION**

My name is Benjamin Sharton, my date of birth is February 20, 1987, and my address is One Boston Place, Suite 2603, Boston, Massachusetts 02108. As an authorized signatory on behalf of ActBlue LLC, based on my review of ActBlue LLC documents and other information, I declare under the penalty of perjury that the facts stated in the foregoing Verified Special Appearance are true and correct.

Executed in Medford, Massachusetts on the 17th day of May 2026.

Benjamin Sharton
Authorized signatory on behalf of ActBlue LLC.

# EXHIBIT A

CAUSE NO. 096-376890-26

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | TARRANT COUNTY, TEXAS |
| ACTBLUE LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | 96th JUDICIAL DISTRICT |
| | § | |

---

## UNSWORN DECLARATION OF GEORGE GILMER

---

1.      My name is George Gilmer, my date of birth is January 26, 1967, and my address is One Boston Place, Suite 2603, Boston, Massachusetts 02108.

2.      I am the Chief Financial Officer for ActBlue.  I have been employed at ActBlue since May 2022.  I am a resident of Massachusetts.  Based upon information I have learned and received in the course of my work in that position, including information provided by other employees of the company, I have personal knowledge of the matters stated herein and, if called upon, I could and would testify thereto.

3.      ActBlue LLC is a Massachusetts limited liability corporation headquartered in Boston, Massachusetts.  ActBlue's sole physical location is in Boston, Massachusetts.

4.      As treasurer and Chief Financial Officer, I am responsible for financial reporting regarding ActBlue operations to the Federal Election Commission ("FEC") and all other regulatory authorities for all ActBlue entities.

5.      ActBlue has no offices in Texas.  Nationwide, ActBlue has 258 employees. Fourteen of these employees reside in Texas.

1

6. ActBlue's managing officers are located in Massachusetts and other states. The Chief Financial Officer, Director of Information Technology, and Account Operations Director are all located in Massachusetts.   None of ActBlue's managing officers are located in Texas.

7. With the exception of ActBlue's fourteen Texas-based employees' compliance with document preservation requirements, the resources involved in ActBlue's responses to investigations, including personnel involved and any document production, take place outside of Texas.

8. None of the conduct alleged in the Petition was undertaken by ActBlue personnel located in Texas.

*  *  *

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 16, 2026, in Falmouth, Massachusetts.

George Gilmer

2

# EXHIBIT B



CAUSE NO. 096-376890-26

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | TARRANT COUNTY, TEXAS |
| ACTBLUE LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | 96th JUDICIAL DISTRICT |
| | § | |

---

## UNSWORN DECLARATION OF BEN SHARTON

1.    My name is Ben Sharton, my date of birth is February 20, 1987, and my address is One Boston Place, Suite 2603, Boston, Massachusetts 02108.

2.    I am the Account Operations Director in Political Technology for ActBlue. I have been employed at ActBlue since July 2014. I am a resident of Massachusetts. Based upon information I have learned and received in the course of my work in that position, including information provided by other employees of the company, I have personal knowledge of the matters stated herein and, if called upon, I could and would testify thereto.

3.    ActBlue has long maintained robust, multi-layered safeguards designed to prevent fraudulent or unlawful political contributions from being processed through its platform, and it regularly reviews and updates those measures to reflect evolving industry standards and emerging threats. These safeguards include automated transaction screening, external auditing, and human review of flagged activity. Each contribution made through the ActBlue fundraising platform is evaluated using industry-standard fraud-detection software that analyzes 140 risk signals including the payment method, card history, issuer information and behavioral indications, and

1

automatically blocks transactions that appear fraudulent. Transactions flagged as high risk but not automatically blocked are subject to manual review by ActBlue staff, who determine if it complies with both legal requirements and ActBlue's own contribution standards. ActBlue's transaction-processing systems are externally audited, and ActBlue is certified as a Level 1 service provider under the Payment Card Industry Data Standard.

4.      Consistent with these safeguards, ActBlue has implemented additional measures in recent years to address identified risks. In 2024, ActBlue began requiring credit card verification values (CVVs) for first-time donors and for returning donors whose payment information had not been saved. In 2025, ActBlue implemented additional restrictions designed to prevent donations origination outside the United States.

5.      Importantly, ActBlue does not treat gift cards and prepaid cards alike. Its policies and controls differentiate between gift cards, non-reloadable prepaid cards, and reloadable prepaid cards, reflecting the materially different risk profiles of those instruments. Gift cards are typically denominated and designed for one-time use with a particular retailer. In contrast, reloadable prepaid cards are designed for repeated use and often linked to an identifiable account, billing address, or administering institution. Contributions made using reloadable cards are subject to ActBlue's standard multilayered fraud-prevention framework and accepted only if they satisfy the same criteria as any other transaction made using a traditional debit or credit card. ActBlue's system is configured to automatically reject gift cards and non-reloadable prepaid cards.

6.      All of ActBlue's policies, including those concerning donations made using gift cards and prepaid debit cards, are developed, implemented, reviewed and managed entirely outside of Texas.

7.      Additionally, all of ActBlue's donation processing and fraud review functions take place outside of Texas.

8.      All of ActBlue's fundraising, infrastructure, payment processing, and compliance functions are conducted outside of Texas, and operate uniformly across all donors, without regard to geographic location.

9.      All funds handled by ActBlue are processed and transmitted through accounts that are located outside of Texas, and all are processed in the same manner regardless of the donor's location.

10.      ActBlue uses a standard set of contribution rules that does not vary by state except where state law imposes additional requirements.  Texas does not require any such additional requirements, and accordingly, contributors based in Texas are shown ActBlue's standard contribution rules.

11.      ActBlue markets, advertises, offers and provides its products and services throughout the United States.

12.      Donors from all fifty states use the platform to make contributions.

13.      ActBlue's relationship with individuals and entities that access or use its platform is governed by its Terms of Service.

a.      Attached as **Exhibit 1** is a true and correct copy of the Terms of Service dated August 19, 2024.

14.      Users must agree to the Terms of Service when they access any of ActBlue's services, including creating an account, making a contribution, or otherwise interacting with ActBlue's fundraising tools.

15.     Campaigns and organizations agree to the Terms of Service when they are onboarded or sign-up to fundraise.

16.     The Terms apply to ActBlue's full range of services it provides, including its website, features, and related technology.

17.     The Terms of Service also incorporate ActBlue's Privacy Policy and Account Use Policy.

18.     The Terms of Service further provide that they govern disputes arising from any use of the ActBlue platform.  The Terms provide that all disputes will be litigated exclusively in the United States District Court of Massachusetts or the state courts of Middlesex County, Massachusetts.  The Terms also provide that both ActBlue and its users "consent to submit to personal and exclusive jurisdiction in those courts."

                              *       *       *

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 16, 2026, in Medford, Massachusetts.

Benjamin Sharton

4

# Exhibit 1

https://www.actblue.com/legal-terms/

May 15, 2026 at 9:43 AM EDT

Donors & Supporters

 ActBlue

Solutions ⌄     Products ⌄     Pricing     Resource Center     Support ↗     Blog     🔍 Search

Login ↗     Start fundraising

# ActBlue Terms of Service

*Effective August 19, 2024*

Previous version

## 1. Introduction

ActBlue provides technology and services for Democratic candidates, progressive organizations, nonprofits, and donors. These Terms of Service ("Terms") govern your access to, interactions with, and use of ActBlue's platform, including our website, services, features, and other technology we offer (collectively, our "Services"), except where we have expressly stated that separate terms apply. By accessing or using our Services, you agree to be bound by these Terms.

The Services are provided by, and you are contracting with, ActBlue LLC or an affiliate in the ActBlue organization, depending on the Services provided. As used in these Terms of Service, "we", "us", "our", and "ActBlue" means ActBlue LLC and our affiliates.

## 2. Privacy

By using ActBlue, you also agree that we can collect and use your personal information in accordance with our Privacy Policy. This includes your interactions and communications with ActBlue on other websites, services, and platforms. We encourage you to read it to better understand how we collect and use personal information.

## 3. Our Services

### (a) Scope of Services

ActBlue builds technology and infrastructure for Democratic campaigns, progressive-aligned causes, and people trying to make an impact in order to fuel long-term, people-powered change. In furtherance of our mission, we engage in a variety of activities that are subject to these Terms, including developing, operating, providing, improving upon, and protecting the ActBlue platform.

Our Services include providing fundraising tools for building a campaign or movement, and solutions for donors to discover and contribute to a candidate or cause. Some of our Services and features may require creating an account, such as ActBlue Express or fundraising on the ActBlue platform, while other Services can be used without an account.

We are not a professional fundraiser, fundraising consultant, or fundraising counsel to the individuals and organizations that use ActBlue. More information about our Services is available on our website, including in our Support page.

### (b) Service Modification

We are constantly developing new technologies and features to improve our Services. As part of this continual evolution, we may add, remove, change, or discontinue certain features or functionalities. We cannot guarantee the ongoing availability of any of our Services, except where we have separately made such commitments to you.

## 4. Your Commitments

### (a) Your Eligibility

You agree to the following commitments concerning your eligibility to access and use our Services:

- **Age Requirements.** You must be at least 18 years old, or the age of majority in your state of residence, to use our Services. If we become aware that you are under this minimum age, we will suspend your access to our Services and/or delete your account.
- **Correct Information.** To promote the safety and accountability of our platform and community, you shall truthfully represent yourself when using our services. You must provide us with accurate, complete, and updated information for your account or when making a contribution.
- **Contract Authority.** If you are using our Services on behalf of an organization or entity, you represent that you have authority to bind that organization or entity to these

Terms. All references to "you" and "your" in these Terms will apply to both you and that organization or entity.

- **Restricted Users.** You cannot use our Services if we have previously disabled your account or restricted your use due to violation of these Terms or other terms and policies, unless we specifically permit you to do so.
- **Other Limitations.** You cannot use our Services if you are a person who is barred from doing so under the laws of the United States or any other applicable jurisdiction. For example, we cannot take part in transactions that involve any individual or entity that (1) is the target of U.S. sanctions or anti-terrorism measures, including parties that have been designated for economic sanctions or trade restrictions on any restricted party list maintained by U.S. authorities that administer applicable trade controls, including but not limited to the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury; (2) is owned 50% or more, individually or in the aggregate, directly or indirectly, by any person or entity designated on any relevant restricted party list or that is otherwise acting on or behalf of or for the benefit of a designated party; or (3) is located or ordinarily resident in, or otherwise conducting activities in, a country or territory that is subject to comprehensive sanctions.

## (b) Your Use and Conduct

We expect you to help keep ActBlue's platform and community secure, safe, and respectful. Your activity on our platform must comply with these Terms—including policies referenced in these Terms, such as our Account Use Policy—and any additional supplemental terms and policies that apply to certain ActBlue services or features that you use. If you agree and comply with these Terms, ActBlue grants you a non-assignable, non-exclusive, revocable, and non-sublicensable license to use the Services in accordance with these Terms. We reserve the right to suspend access to our Services, delete accounts, or take other reasonably necessary steps to address a violation of these Terms.

- **Respecting Laws.** Your use of our Services must comply with all applicable local, state, national, and international laws, rules, and regulations. For example, while some of our Services are designed to support your legal compliance, you are ultimately responsible for ensuring that your political fundraising activities and contributions comply with applicable campaign finance laws, including source prohibitions and contribution limits. Additionally, you may not use ActBlue's Services to engage in any activities that would violate applicable international trade controls or anti-terrorism laws, including, but not limited to, economic sanctions laws and regulations administered by OFAC.
- **Respecting Others.** You may not use our Services to do anything that infringes or violates someone else's rights, including their privacy and intellectual property rights. You cannot use our Services to abuse or harm others, including threatening or encouraging such abuse or harm. For example, you cannot use ActBlue services to mislead, defraud, illegally impersonate, defame, bully, harass, or stalk others.
- **Respecting ActBlue.** You cannot abuse, harm, interfere with, or disrupt our Services, including ActBlue's technology and infrastructure. For example, you cannot access or use our Services in unpermitted ways, introduce malware or spam, or attempt to circumvent our security, integrity, and other protective measures.

## (c) Your Content

Some of our Services, such as contribution forms, allow you to upload, share, provide, or otherwise make available certain content that you own or have rights to use, including text, photos, videos, music or other audio, or branding including trademarks and logos (collectively, "Content"). By providing any Content to the Services, you agree that (i) you have sufficient rights in such Content to provide ActBlue the license as set forth herein and (ii) the Content and/or the provision of such Content does not violate any third party's privacy or intellectual property rights.

- **Accountability.** Content is the responsibility of the person or entity that provides or makes it available on or through the Services, and ActBlue is under no obligation to host or provide Content. If you see any Content that you believe does not comply with these Terms or applicable laws, you can report it to us.
- **License.** By providing us Content, you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of such Content. This license will end when Content is deleted from our systems. However, our license will continue on a case-specific basis if deletion of the Content would impair our ability to (i) detect, investigate, or respond to illegal activity or violations of our terms and policies; (ii) protect the safety, integrity, and security of our platform, our employees, and our users; or (iii) respond to legal process or comply with legal obligations such as record keeping or preservation of evidence.

## (d) Feedback

If you voluntarily send us feedback, suggestions or recommendations about the Services ("Feedback"), we may freely use Feedback without duty or obligation to you. We are not obligated to use Feedback, but if we do, then it becomes part of the Services and our property. All Feedback will be treated as non-confidential and non-proprietary and we will not be liable for any use or disclosure of any Feedback, nor will the submitter be entitled to

any compensation for our use of their Feedback. By sending us any Feedback, you represent and warrant (a) that you have the right to disclose the Feedback, (b) that the Feedback does not violate the rights of any other person or entity, and (c) that your Feedback does not contain the confidential or proprietary information of any third party or parties. This Feedback section shall survive any termination of your account, these Terms, or your use of ActBlue's Services.

## (e) Your Transactions

- **Payments.** When you make a contribution, we may ask you to provide certain information to complete your contribution, including your contact and payment information, and you expressly authorize us to charge you for such contribution and any recurring contributions you authorized. You can also update your saved payment information using our Services. We and our service providers typically address payment issues such as fraud, chargebacks, and resolution of payment disputes, but in cases involving third party services or platforms, we may be unable to address your issue or may direct you to those parties.
- **Recurring Contributions.** Some of our features provide the ability for you to make recurring contributions, such as on a monthly basis. **If you make a recurring contribution, you authorize ActBlue to automatically initiate recurring payments as set forth in these Terms.** Your recurring contribution will automatically continue at the selected interval, and we will charge at the designated cadence (e.g., monthly) unless prior to the next contribution: (a) you cancel, pause, or otherwise modify your recurring contribution;  (b) the recipient stops fundraising on our platform; or (c) these Terms are otherwise properly terminated as expressly permitted herein. You may cancel recurring contributions at any time, but please note that such cancellation will be effective only for future charges associated with your recurring contributions. If you have questions about recurring contributions or believe you made a recurring contribution in error, please contact our Support team.
- **Refunds.** ActBlue will make best efforts to accommodate requests for refunds and will honor each request on a case-by-case basis and at our sole discretion or where required by law. All refund requests are subject to the availability of the contributions funds, and ActBlue will only refund a contribution if we still have the funds or can recover the funds from the recipient. Any refund issued by ActBlue will be credited back to the original payment method used to make the contribution. In cases where ActBlue is unable to accommodate a refund request, we may refer you to the recipient of your contribution so that you may request a refund directly from them. You can learn more here.

## (f) Other Expectations

Your reasonable efforts and sound judgment are necessary to help protect yourself, others, and the integrity of our platform.

- **Account Security.** If you have an account with us, you are responsible for keeping it secure, and for anything that occurs if someone else is signed in to your account. ActBlue is not liable for any loss or damage resulting from your failure to maintain the security of your Account or your password, and we expect you to contact us immediately if you believe your account is compromised.
- **Misuse of Services**. You are not permitted to access, reproduce, download, distribute, transmit, broadcast, display, sell, license, alter, modify or otherwise use any part of our Services, including Content hosted or made available by ActBlue, except as permitted by these Terms or with our prior written permission and, if applicable, the respective rights holder. You may not cause or encourage any inaccurate measurements of user engagement with our Services, or access our Services using automated means—such as bots or scrapers—except in the case of indexing for public search engines or with our written permission.
- **Prohibited Commercial Activity.** You may not use our Services to (i) distribute unsolicited commercial content, which is any media or material that is distributed with the intention of promoting, advertising, or generating revenue for a particular product, service, or for-profit business; or (ii) use our Services to sell or market consumer products, advertising, sponsorships, or promotions to or on behalf of yourself or others.
- **Reporting.** We appreciate your help in reporting suspicious activity on our platform and potential violations of these Terms.

## 5. Copyright Claims

ActBlue may, in appropriate circumstances and at its discretion, remove Content or suspend or terminate accounts of users who infringe the intellectual property of others. If you believe that your copyright or the copyright of a person on whose behalf you are authorized to act has been infringed, please provide ActBlue a written notice containing the following information:

- An electronic or physical signature of the person authorized to act on behalf of the owner of the copyright or other intellectual property interest;
- A description of the copyrighted work or other intellectual property that you claim has been infringed;
- A description of where the material that you claim is infringing is located on the

services;

- Your address, telephone number, and email address;
- A statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; and
- A statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright or intellectual property owner or authorized to act on the copyright or intellectual property owner's behalf.

You can submit a copyright request <u>here</u> or send it to *P.O. Box 441146, Somerville, MA 02144*. To be valid, a notice must be in writing and must follow the instructions above. You also may use the contact information in this Section to notify us of alleged violations of other intellectual property rights.

# 6. Other Legal Terms

## (a) Intellectual Property Rights

As between the parties, ActBlue owns all right, title and interest in and to the Services including all associated intellectual property rights, and you own all right, title and interest in and to the Content, including all associated intellectual property rights. All rights not expressly granted under these Terms are reserved by the granting party.

## (b) Indemnity

You agree, to the extent permitted by law, to indemnify, defend, and hold harmless ActBlue and its affiliates, directors, officers, employees, and agents from and against any and all complaints, charges, claims, damages, losses, costs, liabilities, and expenses (including attorney's fees) due to, arising out of, or relating in any way to: (i) your access to or use of our Services, or any action by a third party in connection with our Services, (ii) your Content, including infringement claims related to it; (iii) your breach of these Terms or any applicable law or regulation, or (iv) your negligence or willful misconduct.

## (c) Disclaimer

Our Services are provided "as is" and "as available" and to the extent permitted by law without warranties of any kind, either express or implied, including, but not limited to, implied warranties of merchantability, fitness for a particular purpose, title, and non-infringement. In addition, while we attempt to provide a good user experience, we do not represent or warrant that: (i) the Services will always be secure, error-free, or timely, (ii) the Services will always function without delays, disruptions, or imperfections, or (iii) that any Content or information made available on or through the Services will be timely or accurate. ActBlue does not take responsibility or assume liability for any Content that you, another user, or a third party shares, uploads, provides, or otherwise makes available on or through our Services. You understand and agree that you may be exposed to Content that might be offensive, illegal, misleading, or otherwise inappropriate, none of which ActBlue will be responsible for.

## (d) Limits on Liability

To the fullest extent permitted by law, ActBlue and its affiliates, directors, officers, employees, and agents will not be liable for any indirect, incidental, special, consequential, punitive, or multiple damages, or any loss of profits or revenues, whether incurred directly or indirectly, or any loss of data, use, goodwill, or other intangible losses, resulting from: (i) your access to or use of or inability to access or use our services, or (ii) the conduct or content of other users or third parties on or through our services. In no event will our aggregate liability for all claims relating to our services exceed the greater of $100.00 USD or the amount you paid us, if applicable, in the 12 months preceding the date of the activity giving rise to the claim.

## (e) Governing Law and Venue

These Terms will be governed by the laws of Massachusetts without regard to its conflict of law provisions. Any claims will be litigated exclusively in the United States District Court for the District of Massachusetts or the state courts of Middlesex County, Massachusetts. You and ActBlue consent to submit to personal and exclusive jurisdiction in those courts.

# 8. General Provisions

## (a) Changes to these Terms

ActBlue may update these Terms from time to time as we improve our platform and develop new services and features. Unless otherwise required by law, we will let you know of any important changes by revising the date at the top of these Terms. In some cases, we may add an additional early notice on our website or send you an email if you provided us with that information. Your continued use of the Services after changes indicates your

acceptance of the new Terms.

## (b) Entire Agreement

These Terms, including any additional terms and policies referenced within, comprise the entire agreement between you and ActBlue and supersede any prior agreements. If we do not enforce a provision in these Terms, it will not be considered a waiver of our rights to enforce these Terms. We reserve the right to transfer our rights under these Terms and provide the Services using another entity. You may not transfer any of your rights or obligations under these Terms without our consent. We reserve all rights not expressly granted to you.

## (c) Termination

ActBlue reserves the right at any time to modify, suspend, discontinue, or terminate, temporarily or permanently, some or all of the Services (or any part thereof), with or without notice and without liability to you or any third party.

ActBlue may terminate or suspend your right to access some or all of the Services, without prior notice or liability, if you breach any of the terms or conditions of these Terms or the Privacy Policy, including using the Services in violation of any applicable law such as trade controls or anti-terrorism laws. Should ActBlue suspect that an individual or entity is using its platform in violation of said laws, we reserve the right to investigate the suspected unlawful conduct. ActBlue will immediately suspend or terminate an individual or entity determined to have violated applicable law.

In the event of termination of these Terms, all sections which by their nature should survive termination shall survive.

## (d) Contact Us

If you have questions about these Terms or our Services, you can contact us.



© 2026 ActBlue. All rights reserved. Images are for illustrative purposes only. No real candidates or campaigns are depicted.

# EXHIBIT C

CAUSE NO. 096-376890-26

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| v. | § § | TARRANT COUNTY, TEXAS |
| ACTBLUE LLC, | § § | |
| Defendant. | § § § | 96th JUDICIAL DISTRICT |

---

**UNSWORN DECLARATION OF JULIE KHAN**

---

1. My name is Julie Khan, my date of birth is November 2, 1979, and my address is 5508 Lakeview Drive, Kirkland WA.

2. I am the Vice President of Brand and External Affairs for ActBlue. I have been employed at ActBlue since March of 2025. I am a resident of Washington. Based upon information I have learned and received in the course of my work in that position, including information provided by other employees of the company, I have personal knowledge of the matters stated herein and, if called upon, I could and would testify thereto.

3. In my role, I lead ActBlue's internal and external communications strategy, including media relations, public messaging, marketing, brand reputation and crisis communications.

4. All statements, letters, or other communications to the public issued by ActBlue are drafted, reviewed, and released outside of Texas. ActBlue personnel in Texas may communicate with individual donors, but they do not draft or disseminate public-facing

1

communications. This includes all of ActBlue's marketing materials which likewise are all drafted, reviewed, and approved outside of Texas.

5. For example, at paragraph 44, the Petition refers to a statement released on ActBlue's website titled "ActBlue Investigation: What's Really Happening and What You Need to Know." This statement was drafted, revised, released, and approved by ActBlue employees outside of Texas.

* * *

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 15, 2026, in Kirkland, Washington.

Julie Khan

2

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ronni Bracken on behalf of Michael Lynn
Bar No. 12738500
rbracken@lynnllp.com
Envelope ID: 114995606
Filing Code Description: No Fee Documents
Filing Description: ACTBLUE???S VERIFIED SPECIAL APPEARANCE
Status as of 5/18/2026 9:58 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael P.Lynn | | mlynn@lynnllp.com | 5/17/2026 2:05:12 PM | SENT |
| Yaman Desai | | ydesai@lynnllp.com | 5/17/2026 2:05:12 PM | SENT |
| Lisa Mewbourn | | lmewbourn@lynnllp.com | 5/17/2026 2:05:12 PM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 5/17/2026 2:05:12 PM | SENT |
| Ronni AdeleBracken | | rbracken@lynnllp.com | 5/17/2026 2:05:12 PM | SENT |
| Zeilic Contreras | | Zeilic.Contreras@oag.texas.gov | 5/17/2026 2:05:12 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 5/17/2026 2:05:12 PM | SENT |
| Steva Christian | | steva.christian@oag.texas.gov | 5/17/2026 2:05:12 PM | SENT |
| Kerri Jones | | kjones@lynnllp.com | 5/17/2026 2:05:12 PM | SENT |
| Mike Scarcella | | mike.scarcella@tr.com | 5/17/2026 2:05:12 PM | SENT |
| David Bizar | | david.bizar@oag.texas.gov | 5/17/2026 2:05:12 PM | SENT |